# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Paul A. Caimano,<br><br>                         Debtor. | C/A No. 12-02159-dd<br><br>Adv. Pro. No. 12-80188-dd<br><br>Chapter 7 |
| Rockstone Capital, LLC,<br><br>                      Plaintiff,<br><br>v.<br><br>Paul A. Caimano,<br><br>                     Defendant. | |

# ORDER

This adversary proceeding comes before the Court on the complaint of the plaintiff, Rockstone Capital, LLC ("Plaintiff"), seeking a denial of discharge of the debtor and defendant, Paul A. Caimano ("Debtor"), under 11 U.S.C. § 727(a)(2). Plaintiff also seeks a determination that the debt owed to it is nondischargeable under 11 U.S.C. § 523(a)(4) and (6). Jurisdiction for this proceeding is premised upon 28 U.S.C. §§ 1334 and 157(a). This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(I), (J). Venue of this adversary proceeding is proper pursuant to 28 U.S.C. § 1409.

Debtor answered the complaint and counterclaimed. Debtor stipulated to the dismissal of his counterclaim with prejudice on December 12, 2012. A trial was held on March 12, 2013. After careful consideration of the applicable law, arguments of counsel, and evidence submitted,

the Court issues the following findings of fact and conclusions of law under Federal Rule of

Civil Procedure 52(a), made applicable by Federal Rule of Bankruptcy Procedure 7052.[1]

## **FINDINGS OF FACT**[2]

1.      Plaintiff is a Maryland limited liability company with its principal place of

business in Maryland.

2.      Debtor is a resident of the State of South Carolina.

3.      On April 2, 2012, Debtor filed a voluntary petition for relief under chapter 7 of

the Bankruptcy Code.  Debtor's bankruptcy case is captioned *In re Paul A. Caimano*, Case No.

12-02159-dd, and is pending in the United States Bankruptcy Court for the District of South

Carolina.

4.      On July 23, 2012, Plaintiff filed this adversary proceeding.

5.      Plaintiff holds a judgment against Debtor in the amount of $143,499.30 plus

interest accruing on the judgment after entry at the interest rate of 7.25% compounded annually.

The judgment was initially issued out of the Common Pleas Court of Allegheny County,

Pennsylvania on April 10, 2009, against Pacco Marketing, Inc. ("Pacco") and Debtor as

guarantor and in favor of Rockstone.

6.      Debtor no longer operates Pacco Marketing, Inc. but currently does business as

Pacco Marketing.  Debtor is a manufacturer's representative who sells shelving, racking,

mezzanines, and similar items for industrial applications.

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are also so adopted.

[2] Most of the facts set forth herein are in the parties' joint pretrial order as facts which are admitted and require no proof.

7.      Pursuant to the Uniform Enforcement of Foreign Judgment Act, S.C. Code Ann. §

15-35-900 *et seq.*, the judgment against Pacco and Debtor was filed in Beaufort County, South

Carolina on July 21, 2009, and properly served upon the judgment-debtors.

8.      Debtor appeared with counsel and challenged entry of the judgment in South

Carolina.  He was represented by Nathan Davis and Brian Davis.

9.      The proceeding was referred to the Master in Equity for Beaufort County

("Master in Equity") who presided over hearings in the matter.

10.     Pursuant to the Uniform Enforcement of Foreign Judgments Act, the judgment

was entered in Beaufort County on March 29, 2010, against Pacco and Debtor, individually, in

the amount of $143,499.30, plus interest accruing on the judgment after entry at the rate of

7.25% compounded annually as provided in S.C. Code Ann. § 34-31-20(B) and as updated by an

order of the South Carolina Supreme Court dated January 4, 2010.

11.     On May 3, 2010, Debtor filed a motion for reconsideration but did not post an

appropriate bond to stay execution of the judgment.

12.     On May 13, 2010, Plaintiff initiated the process of attempting to collect on the

judgment by way of execution through the Beaufort County Sheriff and then by way of

supplementary proceedings pursuant to S.C. Code Ann. § 15-39-310 *et seq.*

13.     The supplementary proceedings were referred to the Master in Equity pursuant to

a Rule to Show Cause and Order of Reference dated August 3, 2010, and entered August 5, 2010

("Rule to Show Cause").

14.     The Rule to Show Cause stated that Debtor was "forbidden and enjoined pursuant

to South Carolina Code Section 15-39-440, from transferring, disposing of, or encumbering any

of [his] property that is not exempt from execution until after these supplementary proceedings

are concluded.  [Debtor] is specifically enjoined from withdrawals or other transfers from bank

accounts, other than for *necessary* living expenses."  Pl.'s ex. E.

15.     Debtor's motion for reconsideration was denied by the Master in Equity on

September 15, 2010.

16.     Debtor subsequently filed a notice of appeal with the South Carolina Court of

Appeals indicating his intent to appeal the Master in Equity's Order for Entry of Foreign

Judgment and the Order Denying Debtor's Motion for Reconsideration.  Debtor failed to request

a transcript of the record for the appeal.  As a result, the appeal was dismissed by an Order of

Dismissal issued by the South Carolina Court of Appeals on December 20, 2010, and a remittitur

was issued on January 5, 2011.

17.     Debtor appeared for an examination under oath on October 21, 2010, pursuant to

the Rule to Show Cause.  At the hearing, Rockstone was represented by Paul D. Harrill, Esquire;

Debtor was represented by Nathan Davis, Esquire.  The hearing was adjourned prior to

completion due to the time constraints of the Master in Equity.

18.     At the October 21, 2010 hearing Debtor produced some, but not all, of the

documents ordered in the Rule to Show Cause.  Debtor was ordered to produce the documents

not produced and additional documents he agreed to produce at the hearing.  Those documents

included all up-to-date financial documents ordered to be produced in the Rule to Show Cause,

including bank statements, statements relating to the balance owed on Debtor's residence, up-to-

date statements from Debtor's Nationwide annuity account (the "Nationwide account"), and

complete schedules for Debtor's tax returns.

19.     Pursuant to a Supplemental Rule to Show Cause and Order of Reference dated

June 2, 2011, and entered June 7, 2011 ("Supplemental Rule to Show Cause"), the

supplementary proceedings hearing was reconvened on August 1, 2011, and Debtor was ordered to produce all documents that he had either failed to produce at the original hearing or had promised to produce at that hearing.

20.    Plaintiff's counsel sent the Supplemental Rule to Show Cause to Debtor's counsel via fax, email, and United States mail.  Pl.'s ex. H.

21.    The Supplemental Rule to Show Cause again stated that Debtor was "forbidden and enjoined pursuant to South Carolina Code Section 15-39-440, from transferring, disposing of, or encumbering any of [his] property that is not exempt from execution until after these supplementary proceedings are concluded.  [Debtor] is specifically enjoined from withdrawals or other transfers from bank accounts, other than for *necessary* living expenses."  Pl.'s ex. G.

22.    After the August 1, 2011 reconvened supplementary proceedings hearing, Debtor produced additional documents through his counsel.

23.    Debtor testified at the August 1, 2011 hearing that he had withdrawn all of the funds in his Nationwide account.

24.    Plaintiff requested that the Master in Equity enter an order providing for application of certain of Debtor's remaining assets towards the satisfaction of the judgment. Debtor was aware that Plaintiff was attempting to obtain an order regarding property of Debtor. Debtor's counsel then advised Plaintiff's counsel that certain exemptions would be claimed if and when an order was entered.

25.    The Master in Equity signed the Order on Supplementary Proceedings on October 20, 2011.  Pl.'s ex. J.

26.    On October 24, 2011, Plaintiff's counsel sent an email to Nathan Davis at davisanddavislaw@aol.com.  Pl.'s ex. I.  Debtor's counsel stipulated in the joint pretrial order

that Brian Davis's email address at which he could receive communications on or about October 27, 2011 was davisanddavis@aol.com. Both Brian Davis and Nathan Davis represented Debtor during the supplementary proceedings. The email states that a signed order Plaintiff's counsel received that day regarding the supplementary proceedings was attached. It requests that Debtor's counsel "[p]lease review the order carefully and ensure that your client does not violate any of the terms and begins cooperation to turn over the designated assets." The attached order is the Order on Supplementary Proceedings.

27.    On October 24, 2011, Plaintiff's counsel mailed the signed Order on Supplementary Proceedings to the Beaufort County Clerk of Court for filing. Pl's ex. K. Debtor's counsel was copied on the letter.

28.    The Order on Supplementary Proceedings was filed on October 27, 2011. Pl.'s ex. J.

29.    On November 2, 2011, Plaintiff's counsel sent a filed copy of the filed Order on Supplementary Proceedings to Debtor's counsel via fax, email, and United States mail. Pl. ex. L.

30.    In the Order on Supplementary Proceedings, the Master in Equity states that Debtor testified to owning stock in Lowes, Dick's Sporting Goods, and Sirius Radio with the stock being held in an Ameritas Investment Corp. account (the "Ameritas account"). Pl.'s ex. J.

31.    The Master in Equity ordered that the entire balance of Debtor's Ameritas account be paid to Plaintiff and applied to its judgment. The Order further required Ameritas to provide an account statement showing all account activity from March 2010 through the date of compliance with the Order. The Master in Equity also enjoined Debtor "from taking any action that would diminish, deplete, encumber or transfer any portion of the balance of the Stock Account until compliance with this order can be obtained by Rockstone." Pl.'s ex. J.

32.    The Order on Supplementary Proceedings also required Debtor to transfer ownership and possession of his 2002 Corvette automobile and 1992 Jeep automobile to Plaintiff, or deliver the vehicles to the Beaufort County Sheriff to be sold in a commercially reasonable manner.  Pl.'s ex. J.

33.    Despite multiple communications with Debtor's counsel prior to the petition date, Debtor has failed to comply with the Order on Supplementary Proceedings requiring transfer of the ownership and possession of the vehicles.

34.    Debtor continues to own the 2002 Corvette automobile and 1992 Jeep automobile and has not transferred them to Plaintiff as of January 16, 2013.  The Court entered an order on November 21, 2012, authorizing the sale of the bankruptcy estate's interest in the 2002 Corvette to Debtor for $10,000.

35.    Prior to filing bankruptcy, Debtor did not personally cause any of the funds in the Ameritas account or any other assets to be transferred over or paid to Plaintiff on account of the judgment or as directed by the Order on Supplementary Proceedings.

36.    The Order on Supplementary Proceedings also enjoined Debtor from any transfer of the house he co-owned at 27 Greenwood Drive, Bluffton, SC 29910 and ordered that the Court would sell the residence and pay one half of the equity to Debtor's spouse and co-owner and would pay the balance of the sales proceeds (after deducting Debtor's homestead exemption) to Plaintiff, who was to apply those funds to the judgment.  Pl.'s ex. J.

37.    As of January 16, 2013, the house located at 27 Greenwood Drive, Bluffton, SC 29910 is still co-owned by Debtor.

38.    Plaintiff filed a motion on March 19, 2012, seeking to place Debtor in contempt of court and to subject him to appropriate penalties of incarceration or repayment of the funds

7

and assets he willfully diminished in violation of the Master in Equity's Order on Supplementary Proceedings.  Plaintiff also sought in the motion for contempt that Debtor be required to fully comply with the terms of the Order.

39.    The Master in Equity scheduled a hearing on the motion for contempt at 1:30 p.m. on April 2, 2012.

40.    At 10:34 a.m. on April 2, 2012, before the contempt hearing could be held, Debtor filed his bankruptcy petition.

41.    Debtor and his spouse are currently involved in divorce proceedings.  Debtor's wife filed a motion for temporary relief in the Family Court for Beaufort County, South Carolina ("Family Court").  The Family Court held a hearing on the motion on May 23, 2011, and issued a temporary order dated July 6, 2011, and entered July 7, 2011 ("Family Court Order").  Def.'s ex. 1.  The Order states that "[o]n May 23, 2011, the Court made a telephonic ruling of the within order by conference call with the attorneys."  In the Order, the Family Court noted Debtor had moved from the marital residence.  The Family Court also stated Debtor was paying all costs of maintaining the marital residence, all of the expenses associated with his spouse's automobile, and his spouse's health insurance.  The Family Court directed the parties to maintain the status quo.  In addition, it ordered that Debtor was solely responsible for any and all expenses associated with maintaining the marital residence, Debtor was solely responsible for any and all expenses associated with maintaining his and his spouse's vehicles, Debtor was to continue paying his spouse's health insurance premium and health care costs, and Debtor was continue paying all other household and marital expenses he was currently paying.  The Family Court stated that Debtor may use marital assets to assist in paying marital obligations and admonished Debtor not to unnecessarily deplete marital assets.

42.     Debtor testified he was unaware of the Order on Supplementary Proceedings until late February 2012 when he received a letter from Ameritas indicating the remaining funds had been taken from his account.   Debtor indicated he waited until April 2, 2012, to file his bankruptcy petition because he was making a final attempt to settle the matter with Plaintiff.

43.     Debtor testified the Nationwide account was a retirement annuity account. Plaintiff's Exhibit P is a document Debtor prepared for his wife's attorney showing withdraws from the Nationwide account between March 2011 and September 2011.  From April 27, 2011, through September 30, 2011, the document reflects that $43,800 was withdrawn from the Nationwide account.

44.     According to the facts to which Debtor stipulated in the joint pretrial order, Debtor caused the funds to be withdrawn from his Nationwide account between March 2011 through September 2011 by contacting his agent and account representative at Nationwide and directing that the funds be liquidated and paid to Debtor.  Debtor testified the money was initially withdrawn to the Bank of America account Debtor jointly held with his wife.  After he and his wife separated, Debtor withdrew the money to his SCBT account.

45.     Debtor testified the Nationwide account is still open with about $600 in it.

46.     In the Order on Supplementary Proceedings, the Master in Equity indicated Debtor testified he was living off the Nationwide account.

47.     The monthly account statements provided by Ameritas reflect the following information regarding the Ameritas account, which was ordered to be paid to Plaintiff under the Order on Supplementary Proceeding entered October 27, 2011, and which Debtor was enjoined from diminishing in any way:

a.      The Ameritas account had a balance of over $11,000 on the date of the supplemental rule to show cause hearing and little or no trading activity had occurred in the prior 18 months.  Pl.'s ex. N.

b.      After the supplemental rule to show cause hearing, Debtor began to liquidate and withdraw funds from the Ameritas account.  On September 29, 2011, he sold $3,855.50 in securities, reducing the balance in the Ameritas account to $6,937.14 as of September 30, 2011.  Pl.'s ex. N.

c.      On October 26, 2011, Debtor sold another $3,128.19 in securities, reducing the balance in the Ameritas account to $4,758.90 as of October 31, 2011.  Pl.'s ex. N.

d.      On December 5, 2011, Debtor sold another $4,374.50 in securities, reducing the balance remaining in the Ameritas account to $507.60 as of December 31, 2011. Pl.'s ex. N.

48.     According to the facts to which Debtor stipulated in the joint pretrial order, Debtor caused the stock investments in the Ameritas account to be liquidated by contacting his agent at Ameritas and requesting that they be sold and that the proceeds be paid to Debtor.

49.     Debtor testified the purpose of the sales of securities in the Ameritas account was to pay his wife's expenses in accordance with the Family Court Order.

50.     Plaintiff withdrew the remaining $507.60 in the Ameritas account after the issuance of the Order on Supplementary Proceedings.

51.     Debtor's April 2011 through March 2012 SCBT bank statements reflect the funds from the Nationwide and Ameritas accounts being credited to the SCBT account.  Pl. ex. Q.

52.     The SCBT bank statements also reflect the following payments to American Express for those months: $8,623.09 in May 2011; $8,248.66 in June 2011; $4,586.77 in July

2011; $6,263.10 in August 2011; $5,306.57 in September 2011; $4,064.32 in October 2011;

$5,244.74 in November 2011; $6,468.21 in December 2011; $6,876.34 in January 2012;

$5,850.85 in February 2012; and $5,502.52 in March 2012.  Pl.'s ex. Q.

53.     Debtor testified the charges on the American Express account were for business

expenses.  Debtor's American Express statements were not introduced into evidence.

54.     Debtor testified the checks drawn on his SCBT account and other debits from the

account for the period from April 2011 to March 2012 were for bills and other expenses.

55.     Debtor testified that the expenses he pays on his wife's behalf include the

mortgage payment, car payment, lawn care, jewelry insurance, and a housecleaner.

56.     Plaintiff is listed in Debtor's Schedule D filed on April 30, 2012, as having a non-

contingent, liquidated and undisputed secured claim in the approximate amount of $173,000.

Debtor listed only two other secured creditors on Schedule D.  U.S. Bank Home Mortgage has a

scheduled claim of $234,111.70.  Debtor has continued to keep those payments current.  The

only other remaining scheduled secured claim is that of Ally Financial whose claim amount is

$23,859.85.  Debtor has reaffirmed this debt to Ally Financial, which is secured by a 2007 GMC

Acadia.

57.     Debtor scheduled a total of only four unsecured non-priority claims in the

aggregate amount of $13,994.02.  However, only two creditors in addition to Plaintiff have filed

unsecured claims against Debtor, and those creditors' claims aggregate $9,043.69.

58.     Plaintiff filed its proof of claim on account of its judgment in the amount of

$174,510.87 on September 19, 2012.

59.     Debtor did not list the Ameritas account or the Nationwide account on his

schedules or statement of financial affairs.

60.    The Personal Guaranty section of the note, which serves as the basis of Plaintiff's judgment against Debtor, states: "Guarantor agrees to pay the costs and expenses (including attorney's fees of Bank in enforcing this Guaranty."

61.    Plaintiff and Debtor scheduled a deposition of Debtor for 12:00 p.m. on January 2, 2013 in Charleston, South Carolina.   Plaintiff, Debtor's counsel, and the court reporter appeared for the deposition at the designated time.   However, Debtor was more than two hours late.

## CONCLUSIONS OF LAW

In the complaint, Plaintiff seeks a denial of Debtor's discharge under 11 U.S.C. § 727(a)(2).  Plaintiff also seeks a determination that the debt owed to it is nondischargeable under 11 U.S.C. § 523(a)(4) and (6).  At trial, Plaintiff indicated it was no longer seeking relief under section 523(a)(4).

### A. 11 U.S.C. § 727(a)(2)

Title 11, section 727(a)(2)(A) of the United States Code provides that a court may deny a discharge to a debtor if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition."  The term "transfer" is defined, in relevant part, as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property."  11 U.S.C. § 101(54)(D).  Thus, the following four elements must be shown for a debtor's discharge to be denied under section 727(a)(2)(A): "(1) the act under scrutiny occurred during the one-year period before the bankruptcy; (2) the act was done with actual

intent to hinder, delay or defraud creditors or the trustee; (3) the debtor or his duly authorized agent was the actor; and (4) the act in question consisted of either the transferring, removing, destroying or concealing of the debtor's property." *In re Ward*, No. 11-04760-dd, Adv. No. 12-80006-dd, 2012 WL 3201871, at *6 (Bankr. D.S.C. Aug. 2, 2012) (citing *In re Filter*, No. 99-04462-W, 2000 WL 33710873, at *5 (Bankr. D.S.C. June 15, 2000)). Section 727 "is to be construed liberally in favor of debtors and strictly against the objector." *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985). Plaintiff has the burden of proving an objection to discharge under section 727 by a preponderance of the evidence. *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994). "Although the burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor." *Id.*

With respect to Debtor's vehicles and house, while Debtor did not comply with the October 27, 2011 Order on Supplementary Proceedings, Plaintiff has not shown Debtor transferred, removed, destroyed, mutilated, or concealed this property prior to his bankruptcy filing. Therefore, Debtor's actions in connection with this property cannot serve as the basis for denying his discharge under section 727.

As for the Nationwide annuity account and the stock held in the Ameritas account, Debtor stipulated that he caused the liquidation of the stock investments in the Ameritas account by contacting his agent at Ameritas and requesting the stock be sold and the proceeds paid to him during the period from September 2011 to December 2011. Similarly, Debtor stipulated to causing the funds to be withdrawn from his Nationwide account between March 2011 and September 2011 by contacting his agent and account representative at Nationwide and directing that the funds be liquidated and paid to Debtor. These acts satisfy the transfer or removal of

assets element of the cause of action for denial of discharge.  Debtor filed his bankruptcy petition

on April 2, 2012, meaning all of the transfers from these accounts after April 2, 2011, were

within one year of his bankruptcy.  Therefore, the only element in dispute with respect to the

Ameritas and Nationwide accounts is whether Debtor acted with actual intent to hinder, delay, or

defraud Plaintiff.

Because direct evidence of intent often is not present, intent for purposes of section

727(a)(2) "'may be established by circumstantial evidence, or by inferences drawn from a course

of conduct.'"  *In re Weldon*, 184 B.R. 710, 713 (Bankr. D.S.C. 1995) (quoting *Devers*, 759 F.2d

at 753-54).  "Extrinsic evidence of fraud, for purposes of defeating discharge, can be comprised

of conduct intentionally designed to materially mislead or deceive creditors about a debtor's

position; conveyances for less than fair value; or continued retention, benefit, or use of property

allegedly conveyed together with evidence that conveyance was for inadequate consideration."

*Id.* (citing *In re Johnson*, 880 F.2d 78, 82 (8th Cir. 1989)).  Courts sometimes examine so-called

"badges of fraud" to infer "intent to hinder, delay, or defraud."  *In re Jones*, 397 B.R 765, 770

(Bankr. D.S.C. 2008).  These badges of fraud include:

> The insolvency or indebtedness of the transferor, lack of consideration for the
> conveyance, relationship between the transferor and the transferee, the pendency
> or threat of litigation, secrecy or concealment, departure from the usual method of
> business, the transfer of debtor's entire estate, the reservation of benefit to the
> transferor, and the retention by the debtor of possession of the property.

*Id.* (quoting *In re Ducate*, 369 B.R. 251, 261 (Bankr. D.S.C. 2007)); *see also In re Lafferty*, 469

B.R. 235, 247 (Bankr. D.S.C. 2012).  "The presence of one badge of fraud does not necessarily

establish fraudulent intent, while a confluence of badges can constitute conclusive evidence of an

actual intent to defraud."  *Lafferty*, 469 B.R. at 248 (internal quotation marks omitted) (quoting

*In re Klinglesmith*, No. 6:10-bk-00416-KSJ, 2011 WL 2471582, at *5 (Bankr. M.D. Fla. 2011 June 2, 2011)).

After careful consideration, the Court finds that Plaintiff has proven actual intent to hinder, delay, or defraud a creditor by a preponderance of the evidence. The Rule to Show Cause the Master in Equity entered on August 5, 2010, stated that Debtor was "forbidden and enjoined pursuant to South Carolina Code Section 15-39-440, from transferring, disposing of, or encumbering any of [his] property that is not exempt from execution until after these supplementary proceedings are concluded. [Debtor] is specifically enjoined from withdrawals or other transfers from bank accounts, other than for *necessary* living expenses." Pl.'s ex. E. The Supplemental Rule to Show Cause entered June 7, 2011, contained the same language. Pl.'s ex. G. Nonetheless, between April 27, 2011 and September 30, 2011, Debtor transferred $43,800 out of his Nationwide annuity account and, between September 29, 2011 and December 5, 2011, sold $11,358.19 of securities in his Ameritas account. Debtor stipulated that he caused liquidation of the stock investments in the Ameritas account by contacting his agent at Ameritas and requesting that they be sold and that the proceeds be paid to Debtor. Stock is a form of property and both show cause orders forbid and enjoined Debtor from disposing of property not exempt from execution. Similarly, Debtor had a property interest in the Nationwide annuity account, and Debtor stipulated that he caused the funds to be withdrawn from the account by contacting his agent and account representative at Nationwide and directing that the funds be liquidated and paid to Debtor.

Moreover, while both show cause orders permitted Debtor to make withdrawals and transfers from "bank accounts" for "*necessary* living expenses," Debtor knew or should have known that the Nationwide and Ameritas account were not bank accounts for purposes of the

show cause orders.  Debtor testified the funds from these two accounts were transferred to the Bank of America account he jointly held with his wife and later to his SCBT account.  Based on the statements introduced into evidence, the SCBT account appears to be a business checking account and most likely would be considered a "bank account" under the Master in Equity's orders.  Pl.'s ex. Q.  No statements from the Bank of America account were introduced, but it probably also was a checking account.  Debtor knew or should have known an annuity account and stock account did not constitute bank accounts under the Master in Equity's orders. Particularly, with respect to the Ameritas account, Debtor had to request that the stock be sold and that the proceeds of the sales be transferred to his SCBT account.  He then paid expenses from the SCBT account.  Additional evidence that Debtor was aware the Nationwide and Ameritas accounts were not bank accounts under the show cause orders exists in his not listing the Nationwide account on his schedule B as a checking, savings, or other financial account even though he testified the account was still open with some $600 in it and his not listing the Ameritas account on schedule B as an open account or on his statement of financial affairs as a closed account.  Pl.'s ex. R.  Debtor signed his schedules and statement of financial affairs under penalty of perjury swearing to their truthfulness and correctness.  *Id.*

As for the Order on Supplementary Proceedings, the Master in Equity signed the Order on October 20, 2011.  Pl.'s ex. J.  The Order on Supplementary Proceedings was filed on October 27, 2011.  Pl.'s ex. J.  On November 2, 2011, Plaintiff's counsel sent a filed copy of the filed Order on Supplementary Proceedings to Debtor's counsel via fax, email, and United States mail.  Pl. ex. L.  In the Order on Supplementary Proceedings, the Master in Equity directed that the entire balance of the Ameritas account be paid to Plaintiff and applied to its judgment.  The Master in Equity also enjoined Debtor "from taking any action that would diminish, deplete,

16

encumber or transfer any portion of the balance of the Stock Account until compliance with this

order can be obtained by Rockstone." On December 5, 2011, Debtor sold $4,374.50 in securities

in the Ameritas account, reducing the balance remaining to $507.60 as of December 31, 2011.[3]

Pl.'s ex. N. Debtor testified he was not aware of the Order on Supplementary Proceedings until

February 2012. As an initial matter, even if he was unaware of the Order on Supplementary

Proceedings, Debtor has not asserted lack of awareness of the August 2010 Rule to Show Cause

and June 2011 Supplemental Rule to Show Cause. Furthermore, "South Carolina law imputes an

attorney's notice of a fact to his client." *In re Long Point Road Ltd. P'ship*, No. 93-72769, No.

96-8296, 1997 WL 33344311, at *4 (Bankr. D.S.C. Sept. 8, 1997) (citing *Crystal Ice Co. of

Columbia v. First Colonial Corp.*, 257 S.E.2d 496, 497 (S.C. 1979)). Debtor's counsel had

notice of the Order on Supplementary Proceedings with its specific instructions regarding the

Ameritas account weeks prior to the December 5, 2011 sale of securities. Given that this notice

is imputed to Debtor, the Court finds that Debtor acted with actual intent to hinder, delay, or

defraud when he sold the securities in the Ameritas account on December 5, 2011.[4] *See Cox v.

Villani*, 478 B.R. 51, 61 (B.A.P. 1st Cir. 2012) ("Similarly unavailing under the law of this

---

[3] December 5, 2011, is reflected as the settlement date for these transactions on the Ameritas statements. Pl.'s ex. N.

[4] Debtor also stipulated to selling $3,128.19 in securities in the Ameritas account on October 26, 2011. On October 24, 2011, Plaintiff's counsel sent an email to Nathan Davis at davisanddavislaw@aol.com indicating that a signed order from the Master in Equity regarding the supplementary proceedings was attached. Pl.'s ex. I. The email states: "Please review the order carefully and ensure that your client does not violate any of the terms and begins cooperation to turn over the designated assets." *Id.* The order attached to the email is the Order on Supplementary Proceedings. *Id.* In the joint pretrial order, Debtor's counsel stipulated they could receive email communications at nathan@davislawsc.com and davisanddavis@aol.com. Given the discrepancy between these two email addresses and the email address where the October 24, 2011 email was sent and the lack of evidence that davisanddavislaw@aol.com was a proper email address for Debtor's counsel, the Court is unable to make a finding that Debtor's counsel received the Order on Supplementary Proceedings prior to the October 26, 2011 sale of securities.

circuit is Villani's argument that he engaged in the subject transfers in reliance upon the advice of counsel, who had informed him that the preliminary injunction did not prevent him from transferring personal assets (but apparently neglected to warn him of potential § 727(a)(2)(A) issues)."); *In re Barman*, 237 B.R. 342, 349 (Bankr. E.D. Mich. 1999) (denying a discharge for refusing "to obey a court order in another bankruptcy case concerning an insider" where the order at issue was a consent order signed by the debtors' attorney and the debtors asserted they lacked notice of the order).

Debtor also argues he used the funds realized from the Nationwide and Ameritas accounts to pay his bills, his wife's bills, and his business expenses. However, the rule to show cause orders only allowed withdrawals from "bank accounts" for "*necessary* living expenses." The Court has found that the Nationwide and Ameritas accounts were not bank accounts and that Debtor knew or should have known these were not bank accounts under the show cause orders. If Debtor needed to use the funds in these accounts for necessary living expenses, he made no attempt to have the Master in Equity's orders altered to allow him to do so. In addition, Debtor use of the funds realized from the Nationwide and Ameritas accounts to pay his bills and business expenses and his wife's expenses does not preclude his discharge being denied under section 727(a)(2). *See In re Marra*, 308 B.R. 628, 630 (D. Conn. 2004) ("[T]he mere fact that the debtor's actions were intended to benefit some creditors does not necessarily preclude a finding that the debtor also intended to hinder or delay another creditor, thus warranting denial of a discharge."); *In re Schafer*, 294 B.R. 126, 131 (N.D. Cal. 2003) ("[W]ithholding funds from one creditor to pay another, does not absolve the debtor of the violation of § 727(a)(2)(A) that he has committed.").

Finally, Debtor asserts the Family Court ordered him to pay his wife's expenses. The Family Court Order has signature date of July 6, 2011, and an entry date of July 7, 2011. Def. 's ex. 1. However, it is based on a hearing held May 23, 2011, and states there was a ruling by conference call with the attorneys on May 23, 2011. The July 7th order, thus, appears to be a written memorialization of the telephonic ruling on May 23d. The Family Court Order directs Debtor to pay any and all expenses associated with maintaining the marital residence, the parties' vehicles and his wife's health care costs and directs Debtor to continue paying all other household and marital expenses that he was currently paying. There is no mention in the Family Court Order of the August 2010 Rule to Show Cause or June 2011 Supplemental Rule to Show Cause entered in the supplementary proceedings in which Debtor was involved. Indeed, there is no evidence Debtor made any attempt with either the Master in Equity or the Family Court Judge to reconcile his obligations in the two proceedings. Rather, Debtor chose to follow the family court order and pay for his wife's expenses, including lawn care, jewelry insurance, and a housecleaner, instead of paying his debt to Plaintiff or holding the assets in the Nationwide and Ameritas accounts until there was a resolution of the supplementary proceeding as the Master in Equity ordered. Additionally, the Family Court Judge did not specifically direct Debtor to continue paying for lawn care, jewelry insurance, and a housecleaner for his wife. When asked why he believed he had to pay all of his wife's expenses, Debtor referred to the language in the Family Court Order directing him to pay all other marital expenses that he was currently paying. This testimony suggests lawn care, jewelry insurance, and housecleaning are some of the expenses Debtor paid instead of his debt to Plaintiff even before the May 23, 2011 Family Court hearing. Further, Debtor's accounting of the transfers from the Nationwide account reflects that $58,800 was transferred during the months of March through September 2011, and that $26,000

of this $58,800 was transferred prior to the May 23, 2011 Family Court hearing.  Pl.'s ex. P.  As a result, even before the Family Court hearing, Debtor had established a pattern of withdrawing funds from the Nationwide account to pay his and his wife's expenses instead of his debt to Plaintiff.

When Debtor appeared before the Master in Equity pursuant to the Rule to Show Cause in October 2010, he was on notice that Plaintiff was attempting to collect on its judgment.  In March 2011, he transferred $15,000 from the Nationwide account.  Pl's ex. P.  He transferred another $11,000 on April 27, 2011.  *Id*.  Then he appeared before the Family Court on May 23d and transferred another $7,500 four days later.  *Id*.  During this time, he made significant expenditures for a struggling business, as he paid over $8,000 on the American Express card in both May and June 2011.  He continued to deplete the Nationwide account, some $58,800 between March and September 2011, until the funds were gone, except for some $600.  In June 2011, the Supplemental Rule to Show Cause was issued, and Debtor again appeared before the Master in Equity on August 1, 2011.  Having depleted the Nationwide account, Debtor liquidated the stock account beginning in September 2011 and ending in December 2011 after the Order on Supplementary Proceedings was issued directing that the funds in the account be paid to Plaintiff.  Having depleted these assets, Debtor filed bankruptcy in April 2012 and now seeks to have his debt to Plaintiff and others discharged.  During the time period in question, Debtor never attempted to reconcile his obligations under the various supplementary proceedings orders and the Family Court Order.  Based on the evidence presented, he never hesitated or sought advice before depleting an annuity account or selling over $11,000 worth of stock even though he was in the midst of a supplementary proceeding whereby a creditor was seeking to collect on its judgment.  The Court has carefully considered all of the evidence and testimony presented.

After doing so, the Court finds that Plaintiff has shown intent to hinder, delay, or defraud by a preponderance of the evidence and that Debtor should not receive a discharge.

**B. 11 U.S.C. § 523(a)(6)**

Plaintiff also seeks a determination that the debt owed to it is non-dischargeable under 11 U.S.C. § 523(a)(6).  Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  Having denied Debtor's discharge, the issue of the whether the debt owed to Plaintiff is non-dischargeable under section 523(a)(6) is moot.

<u>**CONCLUSION**</u>

For the reasons set forth herein, Debtor's discharge is denied under 11 U.S.C. § 727(a)(2).  Plaintiff has consented to the dismissal of its section 523(a)(4) claim and its section 523(a)(6) claim is deemed moot because Debtor's discharge is denied.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**05/13/2013**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 05/14/2013